IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID J. CZAPINSKI, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 07-717 |
| ) | |
| v. ) | Judge McVerry |
| ) | Magistrate Judge Bissoon |
| IRON CITY INDUSTRIAL ) | |
| CLEANING CORP., ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendant's Motion for Summary Judgment (Doc. 16) be granted.

### II. REPORT

**BACKGROUND**

Plaintiff David J. Czapinski has brought this discrimination lawsuit against his former employer, Iron City Industrial Cleaning Corp. ("Defendant"), alleging he was terminated on the bases of disability and age. *See generally* Compl. (Doc. 1) at Count I (ADA); Count II (ADEA); *and* Count III (disability and age discrimination under PHRA). The facts he alleges are as follows.[1]

---

[1] Plaintiff's filings in opposition to summary judgment do not provide evidentiary support for many of his factual averments. *See, e.g.*, Pl.'s Opp'n Br. (Doc. 22) at 1-5 (reciting facts without citation to record evidence); Pl.'s Resp. to Def.'s Stmt. of Facts (Doc. 23) (responding to Defendant's recitation of facts, but failing to make counterstatements of fact); *and* Pl.'s Stmt. of Facts (Doc. 26) in support of stricken Cross-Mot. for Summ. J. (stating, as "fact," citations to case law, legal conclusions, and some evidence regarding Defendant's alleged non-compliance with FMLA). Although Plaintiff may not rest on his Complaint at the summary judgment stage,

Defendant operates a uniform and textile rental business. *See* Compl. at ¶ 9. Plaintiff began working for Defendant as a "Route Coordinator" in December 1982. *Id.* at ¶ 5. Through the years he was promoted to "Assistant Service Manager" and "Route Manager," *id.* at ¶ 8, and his final position was that of "Customer Service Field Manager." *See* Def.'s Stmt. of Facts (Doc. 18) at ¶ 1 *and* Pl.'s Resp. thereto. Irrespective of job title, Plaintiff avers that "his job duties . . . involved heavy lifting on a regular basis." *See* Compl. at ¶ 9.

After a work-related accident in June 2002, Plaintiff began having problems with his right knee. *See id.* at ¶ 10. Plaintiff claims that, on multiple occasions over the next two years, his treating physicians restricted him to "'light duty' only, and [he] was ordered not 'to go out' on [Defendant's] trucks." *See id.* at ¶¶ 11, 13, 15. Plaintiff claims that, despite advising supervisors of his work restrictions, he was ordered to "stay on the trucks" because Plaintiff otherwise was "of no use" to Defendant. *See id.* at ¶¶ 12, 14, 16.

On September 30, 2004, Plaintiff was on one of Defendant's trucks, assisting a new employee, when his "legs gave out and he fell, twisting his back and hurting both knees." *Id.* at ¶ 17. Plaintiff ceased working, he was placed on worker's compensation, and thereafter he underwent total knee replacement surgery on both legs. *See id.* at ¶¶ 18-19.

On August 15, 2005, Plaintiff's treating physician released him to work, restricting him to "sedentary duties only," and Plaintiff alleges he was instructed to "never go back on [Defendant's] trucks again." *See id.* at ¶ 20 (emphasis in original omitted).

On August 19, 2005, Plaintiff "met with company officials to discuss the terms of his return to work . . . . [Plaintiff's] supervisors advised [him] that he had been terminated, effective

---

even taking his pleadings as true, Defendant is entitled to summary judgment. Thus, for the purposes of establishing the background in this case, the undersigned will reference the allegations in the Complaint.

. . . December 23, 2004, almost [eight] months before the meeting. The stated reason for [Plaintiff's] termination was that he had exhausted his time under the [FMLA]" and "had failed to return to work." *Id.* at ¶ 21. Plaintiff asserts that he never requested FMLA leave, and that Defendant "was well aware [he] was unable to work as the result of his disabling work related injuries." *Id.* at ¶ 22.

**ANALYSIS**[2]

In moving for summary judgment, Defendant first argues that it had a legitimate, non-discriminatory reason for terminating Plaintiff's employment: his FMLA leave expired before he was cleared to return to work. *See generally* Def.'s Br. (Doc. 17) at 3-9. Plaintiff responds that, under Supreme Court precedent, Defendant's failure to notify him that he was placed on FMLA leave was in violation of the statute. *See generally* Pl.'s stricken Cross-Mot. for Summ. J. (Doc. 24).[3]

In the Court's view, whether Defendant acted in compliance with FMLA notice requirements is beside the point. As the Court of Appeals for the Third Circuit has repeatedly stated, "<u>pretext is not shown by evidence that the employer's decision was wrong or mistaken</u>, since the factual dispute . . . is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *See* <u>Kautz v. Met-Pro Corp.</u>,

---

[2] The ADA Amendments Act of 2008 went into effect on January 1, 2009, so it does not apply in this case. *See* <u>Kiesewetter v. Caterpillar Inc.</u>, 2008 WL 4523595, *1 (7th Cir. Oct. 9, 2008) (holding same). Thus, the District Court should apply "the laws and interpretations that were in force when the complained-of acts occurred." *Id.* (citation omitted).

[3] Plaintiff's Cross-Motion for Summary Judgment was stricken as untimely, and because Plaintiff could not be entitled to judgment as a matter of law based on a statute (*i.e.*, the FMLA) not alleged as an affirmative basis for relief in the Complaint. *See* text Order dated Nov. 10, 2008. The Court granted Plaintiff's subsequent request that the arguments made in his Cross-Motion be considered as part of his opposition to Defendant's Motion for Summary Judgment. *See* text Order dated Dec. 1, 2008.

412 F.3d 463, 467 (3d Cir. 2005) (citation to quoted source omitted, emphasis added). Plaintiff's objections, therefore, are without merit.

Defendant's reliance on the FMLA is not without its own detractions, however. Specifically, the record is conspicuously silent regarding <u>when</u> Defendant determined Plaintiff's FMLA leave expired and that he would be terminated as a consequence. *See* Def.'s Facts at ¶ 11 (indicating Defendant "made the decision to terminate Plaintiff's employment effective December 23, 2004," but failing to specify when decision was made) *and id.* at ¶ 10 (referencing date Plaintiff was released for sedentary duty, August 15, 2005, but failing to indicate whether Defendant made termination decision before then, at that time, or thereafter). Although one may question the degree to which this ultimately affects Defendant's entitlement to summary judgment, at a minimum it raises the specter of *post hoc* rationalization. *See generally* <u>Kautz</u>, 412 F.3d at 467 (to avoid summary judgment, plaintiff may rebut employer's proffered non-discriminatory reason by showing it was "a *post hoc* fabrication or otherwise did not actually motivate the employment action") (citation to quoted and other sources omitted). The District Court need not address this issue, though, as Defendant has demonstrated Plaintiff's failure to prove disability under the ADA.

In order to qualify as "disabled," Plaintiff must show that his impairment(s) "significantly limited one or more [of his] major life activit[ies]." <u>Marinelli v. City of Erie</u>, 216 F.3d 354, 361 (3d Cir. 2000). In this case, Plaintiff claims limitation in the major life activity of working. *See* Pl.'s Resp. to Def.'s Facts at ¶ 45.

Plaintiff's evidence of disability takes the form of exertional restrictions imposed by treating physicians regarding his capacity to work. *See generally* Pl.'s Compl. at ¶¶ 11, 13, 15. Although Plaintiff's counsel makes reference to multiple physician reports, the only inclusions in

4

the summary judgment record are the July 15, 2004 report of Dr. John Tucker and the July 19, 2005 report of Dr. Timothy Honkala. *See* Tucker Rpt. (filed under Doc. 18-6); Honkala Rpt. (Doc. 18-8). Dr. Tucker identified some limitations regarding Plaintiff's capacities for postural manipulation and walking or standing for long durations, and he ultimately concluded Plaintiff could function "[f]ull [t]ime" at the "[l]ight [w]ork" level. *See* Doc. 18-6 at pg. 6 of 6. In Dr. Honkala's single-page report, he opined without explanation that Plaintiff could return to work on August 15, 2005 at the "sedentary" level. *See* Doc. 18-8.

The Third Circuit Court in <u>Marinelli</u> found such evidence insufficient to establish disability under the ADA:

> [The plaintiff] argues . . . that his inability to lift articles at more than a sedentary level establishes that he is substantially limited in [the] major life activity. . . . [of] 'lifting' . . . . [C]ourts have rejected claims of disability based on an inability to lift similar weights to those with which [the plaintiff] alleges to experience difficulty . . . . As [the plaintiff's] ten-pound limitation is not far removed from the twenty-five pound restrictions our sister circuits have held not to render one disabled under the ADA, we would also hold that [his] lifting restriction does not render him sufficiently different from the general population such that he is substantially limited in his ability to lift.

*Id.*, 216 F.3d at 363-63 (citations and internal quotations omitted).

Plaintiff has not advanced the theory that he was significantly limited in the major life activity of "lifting." *See* Pl.'s Resp. to Def.'s Facts at ¶ 45 (indentifying relevant major life activity as working). Even if he had, Plaintiff's restrictions to "light" and "sedentary" work are insufficient under <u>Marinelli</u>.[4] *See id.*; *see also, e.g.*, <u>Leone v. Air Prods. & Chem., Inc.</u>,

---

[4] Plaintiff's has introduced no evidence regarding Dr. Honkala's understanding of the term "sedentary [work]." Plaintiff "bears the burden of establishing that he is disabled within the meaning of the ADA," and he is required to "affirmatively introduce evidence to this end in order to survive a motion for [summary] judgment." <u>Marinelli</u> at 363. In other contexts,

5

2008 WL 1944104, *3 (E.D. Pa. May 1, 2008) (collecting cases holding that, under Marinelli, "sedentary restrictions . . . are insufficient to establish that the plaintiff was disabled within the meaning of the ADA").

Marinelli likewise is dispositive of Plaintiff's stated major life activity of working:

> [T]o be properly characterized as substantially limited from working [under] the ADA, an individual must be unable to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. . . . [T]he courts . . . have required a plaintiff to show that his . . . impairment prevents [him] from engaging in a [broad] category of jobs.
>
> [G]eneral averments [of exertional restriction are] insufficient to establish disability status under the ADA. . . . [Such evidence] establishe[s only] that the individual [is] disqualified from a narrow range of jobs, and therefore [is] insufficient to establish that [a] plaintiff [is] disabled within the meaning of the ADA. . . . As a result, [a plaintiff] cannot avoid [summary] judgment . . . simply by pointing to the [exertional] restrictions . . . placed upon his work [by a physician].

364-65 (citations and internal quotations omitted).

Whether Plaintiff's restrictions are viewed through the prism of "lifting" or "working," his evidence is insufficient to establish disability under the ADA. Defendant, therefore, is entitled to summary judgment on Plaintiff's disability discrimination claims.[5]

Plaintiff also has failed to state a viable claim of age discrimination. "[I]n order to establish a *prima facie* case under the ADEA, a plaintiff must show, among other things, that he

---

"sedentary work [has been] defined as involving the lifting of no more than ten pounds," *see, e.g.*, Allen v. Bowen, 881 F.2d 37, 41 (3d Cir. 1989), and this was the same limitation rejected in Marinelli. *See* discussion *supra* in text.

[5] The Court's analyses under the federal discrimination statutes at issue here are dispositive of Plaintiff's claims under the PHRA. *See* Neishel v. Citadel Broadcasting Corp., 2008 WL 510137, 15 n.18 (M.D. Pa. Feb. 22, 2008) (PHRA claims are governed by same legal standards applicable under ADA and ADEA, and thus "it is . . . []common [for courts] to address such claims collectively") (citation to quoted source omitted).

was 'qualified' for the position he held prior to his termination." Detz v. Greiner Indus., Inc., 346 F.3d 109, 119 (3d Cir. 2003). "In the Third Circuit, to be qualified under the ADEA, an employee must be 'physically capable of performing' the functions of his job." Cornell v. Severn Trent Envtl. Servs., Inc., 2005 WL 2035861, *3 (M.D. Pa. Aug. 24, 2005) (quoting Detz, 346 F.3d at 120). "It is [also] important to note that[,] while reasonable accommodation[] may make a worker qualified under the ADA," accommodations are not required under the ADEA. *Id.*[6]

In support of his disability claim, Plaintiff has put forth evidence that he was restricted in his capacity to lift, first when he was limited to "light" work, and later to "sedentary" work. *See* discussions *supra*. In fact, Plaintiff confirmed through interrogatory responses that, as of November 5, 2007, Plaintiff had "not [been] released to go back to work" in any capacity. *See* Pl.'s Nov. 5th Resp. to Def.'s Interrog. No. 14 (filed under Doc. 18-5, pg. 7 of 14).

This evidence notwithstanding, Plaintiff has affirmatively pled that his former positions required "heavy lifting on a regular basis." *See* Compl. at ¶ 9. In this and other contexts, Plaintiff time and again has stated his clear inability to return to his former work. *See, e.g.*, *id.* at ¶ 22 (Defendant "was well aware that [Plaintiff] was unable to work as [a] result of his [purportedly] disabling work related injuries"); Pl.'s Opp'n Br. at 4 (stating same). Further, in both his pleadings and in opposition to summary judgment, Plaintiff affirmatively cites the May 19, 2006 findings of Worker's Compensation Judge Rosalia G. Parker that Plaintiff

---

[6] As just referenced, the ADEA carries no duty of accommodation. *See* Detz, 346 F.3d at 117 ("the ADEA does not include" provisions "that might be analogized to the 'reasonable accommodation' language of the ADA"). Moreover, given that Plaintiff was not disabled under the ADA, the District Court need not reach the issue of accommodation under that statute. *See* McDonald v. Pennsylvania Dep't of Pub. Welfare, 62 F.3d 92, 96 (3d Cir. 1995) (where plaintiff "is not 'disabled' as . . . contemplated by the [ADA]," his employer "[is] not required to provide accommodation").

"remain[ed] . . . totally disabled," and Defendant terminated him because "he could not perform his pre-injury . . . work as a result of the residual disability" suffered in his June 2002 work injury. *See* Compl. at ¶¶ 27(A)-(C); Opp'n Br. at 4.

Although Plaintiff attempts to generate an issue of material fact by now claiming that lifting was a "marginal component" of his final job position, *see* Opp'n Br. at 7-8, the Complaint's assertion that Plaintiff's jobs required "heavy lifting on a regular basis" constitutes a judicial admission, and it cannot be cast aside for the purposes of defeating summary judgment. *See* Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 181 (3d Cir. 2008) ("[j]udicial admissions are formal concessions in the pleadings . . . that are binding upon the party making them") (citation to quoted source omitted); *see also* Southwick Clothing LLC v. GFT (USA) Corp., 2004 WL 2914093, *6 (S.D.N.Y. Dec. 15, 2004) (facts in pleadings are "judicial admissions that bind plaintiffs throughout the course of the litigation," and "[p]laintiffs cannot survive" summary judgment "by contradicting their own pleadings in an effort to raise a genuine issue of fact") (citation omitted).

Plaintiff's internally inconsistent assertions, that he was both qualified for his former positions and physically incapable of performing them, are fatal to his claims of age discrimination. This conclusion is bolstered by the decision in Detz. There, the Court of Appeals for the Third Circuit held that the plaintiff-employee's statements to the Social Security Administration that he was unable to work were "patently inconsistent" with his claim under the ADEA that he was qualified for his former job. *See id.*, 346 F.3d at 119-21 (citation to quoted source omitted). Among other things, the court stated:

> The fatal flaw in [the plaintiff's] attempt to [find] some consistency in his positions is that it ignores the statements he made repeatedly to the SSA regarding his disability. In fact, his explanation is no more than a further contradiction of his initial assertion, and it does nothing to reconcile his previous two assertions -- one that he was unable to work, and the other that he could perform the job from which he was terminated.
>
> . . . .
>
> Furthermore, a careful reading of the SSA's decision granting . . . benefits reveals that [the plaintiff] succeeded in convincing the SSA that his physical limitations actually prevented him from continuing in his previous job . . . . Accordingly, [the plaintiff's] explanation does nothing to reconcile his current position with the statements he made to the SSA or the decision it rendered in his favor.

*Id.* at 120.

Although the specific issues presented in Detz are somewhat different, the rationale underlying the Third Circuit's analyses applies with equal force in this case. Here, Plaintiff is bound by judicial admissions that he was unable to perform his former job responsibilities because they required "heavy lifting on a regular basis." *See* discussions *supra*. In appearing before the Worker's Compensation Judge, Plaintiff's purpose, by definition, was to convince the Judge he was unable to engage in his prior work due to a vocation-related injury. Plaintiff "succeeded in convincing the [Judge] that his physical limitations actually prevented him from continuing" his job, and these circumstances preclude a demonstration by Plaintiff that he was "qualified" to perform his former positions under the ADEA. *See* Detz, 346 F.3d at 120. Plaintiff cannot state a *prima facie* case of age discrimination, and Defendant is entitled to summary judgment.

These analyses address, either expressly or by implication, all of Plaintiff's arguments in opposition to Defendant's Motion. The remaining arguments in Defendant's briefing are either superfluous or moot.[7]

**CONCLUSION**

For the reasons stated above, Defendant's Motion for Summary Judgment (Doc. 16) should be granted.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by February 9, 2009. Responses to objections are due by February 23, 2009.

January 22, 2009                                  s/Cathy Bissoon
                                                  Cathy Bissoon
                                                  United States Magistrate Judge

cc (via email):

John R. Orie , Jr., Esq.
Jeffrey B. Balicki, Esq.

---

[7] Plaintiff's purported demotion in April 2002 arises within the context of his ADA claim, and the undersigned already has determined above that Plaintiff was not "disabled" under that Act. *Cf.* Def.'s Br. at 15-19. Plaintiff's claim that Defendant caused him to aggravate preexisting injuries is irrelevant because he has not attempted to assert a claim sounding in tort. *Cf. id.* at 19-20. Finally, the Court need not address the issue of punitive damages because Defendant is entitled to summary judgment on liability. *Cf. id.* at 21-23.

10